# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JENNIFER BANDIERO,

    Plaintiff

v.

WYNN LAS VEGAS, LLC,

    Defendant

Case No.: 2:23-cv-002115-APG-NJK

**Order (1) Granting in Part Defendant's Motion for Summary Judgment, (2) Granting in Part Plaintiff's Motion for Partial Summary Judgment, (3) Granting in Part Plaintiff's Motion for Leave to File under Seal, and (4) Granting Defendant's Motion for Leave to File under Seal**

[ECF Nos. 27, 29, 30, 33]

Jennifer Bandiero sues Wynn Las Vegas, LLC for disability discrimination and retaliation under the Americans with Disabilities Act (ADA) as well as for disability discrimination under Nevada's analogous statute. A Wynn cocktail server since 2008, Bandiero was diagnosed with lupus in 2014. In December 2021, Bandiero and Wynn entered into a Settlement Agreement allowing her to remain on a medical leave of absence until her doctor approved her to work again with or without accommodations for her disability. Bandiero sought to return to work in early 2023, and she ultimately returned as a cocktail server in April 2023 with a reduced two-day-a-week schedule to accommodate her disability. Bandiero alleges that Wynn discriminated and retaliated against her on numerous occasions after she signed the Settlement Agreement in December 2021 and after she sought to return to work in early 2023.

Wynn moves for summary judgment on all of Bandiero's claims. ECF No. 30. Wynn argues that Bandiero's ADA and state law disability claims fail because Wynn granted Bandiero all reasonable accommodations she requested, she suffered no adverse employment actions, and none of the alleged adverse employment actions were because of her disability. Wynn argues

that Bandiero's ADA retaliation claim similarly fails because she suffered no adverse employment actions because of her protected activity.  Additionally, Wynn argues that Bandiero has not cited any evidence to support her claim for punitive damages.

Bandiero moves for summary judgment on Wynn's affirmative defenses of claim exhaustion, statute of limitations, and the after-acquired evidence rule.[1]  ECF No. 27.  She also moves for summary judgment on whether she is a qualified individual for the purposes of ADA discrimination and whether Wynn subjected her to adverse employment actions for the purposes of ADA discrimination and retaliation.

For the reasons below, I grant Wynn's motion on Bandiero's ADA and state law disability discrimination claims and her request for punitive damages.  I grant Bandiero's motion with respect to Wynn's administrative exhaustion, statute of limitations, and after-acquired evidence rule defenses.  I deny both motions in all other respects.

Additionally, both Wynn and Bandiero move for leave to seal some exhibits. ECF Nos. 29, 33.  For the reasons below, I grant Wynn's motion.  I also grant Bandiero's motion as to her medical records but deny it as to the exhibit containing the December 2021 Settlement Agreement.

The parties are familiar with the facts, so I discuss them only to the extent necessary to resolve these motions.  Unless otherwise noted, the statements of fact below are undisputed.

---

[1] Bandiero also moves for summary judgment on Wynn's thirteenth affirmative defense.  Though Wynn styles this defense as an affirmative defense, much of it merely negates various elements of Bandiero's ADA discrimination claim, for which Bandiero has the burden of proof. *See* ECF No. 13 at 19.  Wynn asserts a good faith defense against Bandiero's failure to accommodate claim. *See* 42 U.S.C. § 1981a(a)(3).  But because I grant Wynn summary judgment on Bandiero's ADA discrimination claim below, I deny Bandiero's motion as to this defense as moot.

## I.      Legal Standard

Summary judgment is appropriate when the pleadings and discovery materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotation omitted).  A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party, and a dispute is "material" if it could "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts, summary judgment is not appropriate. *See id.* at 250-51.  "The amount of evidence necessary to raise a genuine issue of material fact is enough to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (simplified).

## II.     Wynn is entitled to summary judgment on Bandiero's federal and state discrimination claims, and Bandiero's motion for summary judgment as to these claims is thus moot.

Wynn moves for summary judgment on Bandiero's ADA and Nevada state law discrimination claims.  Wynn argues that there is no adverse employment action to support Bandiero's claim of discrimination because Wynn provided her a reasonable accommodation by letting her work only two days per week.  It also argues that Bandiero cites no adverse action to support her disparate treatment claim.  And it contends there is no evidence to support a but-for causal connection between any alleged adverse actions and Bandiero's disability.  Bandiero responds that Wynn denied her reasonable accommodations and subjected her to several adverse employment actions because of her disability.

Bandiero moves for summary judgment on whether certain events constitute adverse employment actions under ADA discrimination, leaving for trial whether such adverse actions were because of her disability.  She also seeks summary judgment on the issue of whether she is

a "qualified individual" for the purposes of ADA discrimination.  Wynn responds that none of these events constitutes adverse employment actions and that whether Bandiero is a qualified individual is factually disputed.

### A.    Bandiero raises no triable issue on Wynn's alleged failure to accommodate.

Title I of the ADA prohibits employers from discriminating against qualified individuals on the basis of their disability in regard to the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  The ADA contemplates failure to accommodate and disparate treatment as two separate forms of discrimination. *McGary v. City of Portland*, 386 F.3d 1259, 1265-66 (9th Cir. 2004).  "A plaintiff need not allege either disparate treatment or disparate impact in order to state a reasonable accommodation claim." *Id.* at 1266.  Nevada law similarly prohibits discrimination based on disability in the employment context. Nev. Rev. Stat. § 613.330.  A claim for disability discrimination under the Nevada statute is evaluated under the same standard as a federal ADA claim. *Littlefield v. Nev., ex rel. Dep't of Pub. Safety*, 195 F. Supp. 3d 1147, 1152 (D. Nev. 2016).

Under the ADA, "discrimination includes an employer's not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business." *U.S. E.E.O.C. v. UPS Supply Chain Sols.*, 620 F.3d 1103, 1110 (9th Cir. 2010) (simplified).  "[A]n employer has discretion to choose among effective modifications, and need not provide the employee with the accommodation he or she requests or prefers." *Id.* at 1113.  But summary judgment is not appropriate if a jury

1  "could reasonably conclude that the employer was aware or should have been aware that those

2  modifications were not effective." *Id.*

3      Additionally, "once an employee requests an accommodation . . ., the employer must

4  engage in an interactive process with the employee to determine the appropriate reasonable

5  accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). "The

6  interactive process requires communication and good-faith exploration of possible

7  accommodations between employers and individual employees, and neither side can delay or

8  obstruct the process." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001).

9  But "there exists no stand-alone claim for failing to engage in the interactive process. Rather,

10 discrimination results from denying an available and reasonable accommodation." *Snapp v.*

11 *United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018).

12     Wynn argues that it never failed to accommodate Bandiero because she received the

13 reasonable accommodation of a reduced weekly work schedule. Bandiero responds that there is

14 a genuine dispute regarding whether she was denied a reasonable accommodation because Wynn

15 fired her for the month of February 2023 instead of accommodating her and assessed an

16 attendance point based on its intentional misinterpretation of her doctor's recommendation in

17 June 2023.

18          *1.    Alleged termination in February 2023*

19     Bandiero claims that Wynn denied her reasonable accommodation because Wynn

20 "literally fired Plaintiff as a cocktail server on February 1, 2023" for an "entire month." ECF No.

21 36 at 19. During a February 1, 2023 phone call, Wynn ADA administrator Eva Ramirez told

22 Bandiero that Wynn "has determined that continuing your leave of absence is not a reasonable

23 accommodation" under the ADA. ECF No. 27-1 at 153 (February 13, 2023 email from Ramirez

   to Bandiero memorializing the February 1 phone call). Ramirez then stated that as an

"alternative," Wynn "will work with you to determine if there is another open position within the Company for which you are qualified." *Id.* If Bandiero chose to engage in this process, Wynn would place her on a "30-day job search." *Id.* The February 13 email memorializing this phone call indicated that failure to respond to this job-search offer "may result in your employment being separated." *Id.*

Bandiero contends that an offer of a 30-day job search was equivalent to being fired because the 30-day job search was a "completely useless . . . sham." ECF No. 36 at 23. Bandiero concludes that whether "a reasonable employee would consider themselves fired" during February 2023 under these circumstances is an issue for trial. *Id.* at 19.

Wynn responds that Bandiero mistakenly believed that she was fired and has pointed to no evidence that she was. Wynn argues that it offered Bandiero an option to continue her employment at Wynn and that Bandiero was on leave until April 21, 2023, when Bandiero returned to work as a cocktail server with her reduced schedule accommodation.

Even viewing the evidence in Bandiero's favor, a jury could not reasonably conclude that the February 1 conversation or February 13 email terminated Bandiero. Bandiero relies on the email exchange between her and Ramirez, but those emails do not support Bandiero's position. Ramirez's email stated that Bandiero "may" be terminated if she did not respond to the email, not that she was. Bandiero responded that "I do not want the Company to terminate me or force a 30-day job search on me." ECF No. 27-1 at 155 (February 21, 2023 email). This statement suggests that she wanted to avoid termination, not that she thought that she was already terminated. Additionally, Bandiero avers that she believed she was "fired as a cocktail server for a month." ECF No. 37 at 8 (simplified). But this statement does not show that Wynn terminated Bandiero. Instead, this statement is consistent with Ramirez's statement that Wynn would

attempt to place Bandiero in a different position, which is not itself an adverse action. *See U.S. E.E.O.C.*, 620 F.3d at 1113 (noting that an employer "need not provide the employee with the accommodation he or she requests or prefers") (simplified).  Bandiero does not dispute that Wynn made this offer and that Bandiero chose not to pursue it.

Instead of pointing to evidence of actual termination, Bandiero argues that placement on a 30-day job search is termination by another name.  The parties dispute whether Wynn's 30-day job search program is effective or provided in good faith.[2]  Bandiero contends that this dispute is material because whether Bandiero believed in February 2023 that she was fired is material to whether she was actually fired.  She cites no authority for this proposition.  But even if Bandiero's reasonable beliefs were material, Bandiero does not explain why she would have known any of the information in the record about the efficacy of the job search program.  So even if her reasonable beliefs were material, Bandiero has not provided evidence that a reasonable person would have viewed the 30-day job search offer as tantamount to termination.

Aside from alleging Wynn terminated her, Bandiero cites no evidence that the February 2023 communications from Ramirez altered the terms or conditions of her employment. Bandiero does not dispute that she was on unpaid leave when she requested an extension of her leave to March 14, 2023. *See* ECF No. 27 at 6.  Before the proposed March 14 return date, Wynn decided to allow Bandiero to return to work as a cocktail server in a March 1, 2023 email from

---

[2] *Compare* ECF Nos. 39 at 160-161 (Wynn employee relations manager Karen Sanchez testifying that she could not name anyone successfully placed through a 30-day job search); 40 at 65-66 (Wynn director Christopher Boylan testifying to the same); 40 at 107-108 (former Wynn employee Wayne Tambone averring that he was placed on a 30-day search but that the recruiter never responded to his communications, making the placement program "useless"); *with* ECF No. 37 at 130 (Ramirez testifying that Wynn "probably had two" successful placements during her time as ADA administrator at Wynn "because of the employees were actually making effort" with Wynn's recruiter).

1    Bryan Cohen, Wynn's legal counsel, to Bandiero. *See* ECF No. 37 at 190.  The parties do not

2    dispute that this exchange did not cause Bandiero to lose out on work days or employment

3    benefits and that Bandiero returned with accommodations in April.

4    Therefore, even viewing the evidence in a light most favorable to Bandiero on Wynn's

5    motion, Wynn did not fail to accommodate Bandiero by firing her in February 2023.  So I grant

6    Wynn's motion as to Bandiero's alleged February 2023 termination.  Accordingly, I deny

7    Bandiero's motion on this issue as moot.

8                    2.    *June 2023 interpretation of doctor's note*

9    Bandiero next suggests that Wynn denied her reasonable accommodation in June 2023 by

10   requiring her to work three days a week based on its interpretation of a doctor's note in June

11   2023.[3]  On May 31, 2023, Bandiero provided Wynn with ADA accommodation paperwork,

12   which included a doctor's recommendation that Bandiero receive "[t]he following work

13   schedule: up to 2-3 days per week, 8 hour shifts per day[,] no more than 3 days per week." ECF

14   No. 38 at 104, 109.  Bandiero submitted this paperwork to support a new ADA accommodation

15   arrangement starting June 3, 2023.  On June 6, 2023, Wynn sent Bandiero two different

16   "Acknowledgement of Accommodation" forms within minutes of one another.  The first

17   accommodation form permitted Bandiero to report "up to 3 absences per week without penalty

18   until 06/18/2023." ECF No. 38 at 119-20.  The second accommodation form permitted Bandiero

19   to report "up to 2 absences per week without penalty until 08/18/2023." *Id.* at 122-23.

20   According to Wynn's interpretation of her doctor's recommendation, Bandiero could work three

21

22   [3] Though Bandiero does not expressly assert this event as a failure to accommodate in the
     argument section of her brief, she does imply in her statement of facts that this event constituted
23   a failure to accommodate. *See* ECF No. 36 at 9 (asserting that "accommodating Plaintiff's
     modified work schedule" would not constitute a "hardship on the company," which is a
     component of a failure to accommodate claim).

1    days per week (and report a maximum of 2 absences) every week starting June 19, 2023. ECF

2    Nos. 37 at 155.  On July 2, 2023, Wynn imposed an "attendance point" on Bandiero for calling

3    out a third time in a single week. ECF Nos. 27-1 at 14; 38 at 164.

4         Bandiero argues that Wynn "intentionally misrepresented her own physician's

5    certifications by unilaterally claiming (without seeking an interactive process first) that her

6    physician's indication that she can work 2-3 days per week automatically means 3 days per week

7    every week, leading to an unreasonable accommodation that was in place for weeks and resulted

8    in Plaintiff having to take disciplinary points." ECF No. 27 at 23-24.  Bandiero cites her

9    physician's statement that he "wanted her to be able to choose between working two days per

10   week or three days per week depending on her recovery." ECF No. 38 at 137.

11        Wynn responds that it never denied Bandiero a reasonable accommodation.  It argues that

12   the physician's interpretation of his recommendation is irrelevant because Wynn has the ultimate

13   discretion to choose between available, effective reasonable accommodations.  Wynn also argues

14   that when Bandiero asked to be allowed to call out three times per week, Wynn allowed her to

15   submit further paperwork as part of the interactive process.

16        Even viewing the evidence in Bandiero's favor, a jury could not reasonably conclude that

17   Wynn denied Bandiero a reasonable accommodation by providing her an accommodation to

18   work three days per week.  It is undisputed that Wynn received the doctor's recommendation that

19   Bandiero work "up to 2-3 days per week" but did not receive any other information from

20   Bandiero's doctor on how Wynn should implement this "2-3 days per week" recommendation.

21   Though the doctor testified that he intended Bandiero, not Wynn, to choose whether Bandiero

22   would work 2 or 3 days per week, the doctor's written recommendation did not reflect this

23   clarification.  "What an employer knows is limited by the evidence the employer receives," so

Wynn cannot be held responsible for information that the doctor does not communicate. *See Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009).  Bandiero cites no other evidence that "up to 2-3 days per week" unambiguously meant 2-3 days per week at Bandiero's discretion.  So a jury could not reasonably conclude that Wynn intentionally misread the recommendation given the information it had.

Additionally, Bandiero contends that Wynn failed to engage in the interactive process with her because its decision was unilateral.  But the record does not support this contention. Wynn provided an accommodation based on its interpretation of the doctor's written recommendation.  When Bandiero requested that Wynn provide her a 2-day-per-week work schedule, Wynn asked for clarification from Bandiero's doctor.  Wynn is allowed to do so under the ADA, and it has no "duty under the ADA to engage in further interactive processes in the absence of requested medical evidence." *See Garcia v. Salvation Army*, 918 F.3d 997, 1010 (9th Cir. 2019) (simplified).  Bandiero submitted that information in June 2023. ECF No. 38 at 148, 156.  Wynn sought to meet with Bandiero regarding this information about a week later. *Id.* at 161.  Wynn then provided Bandiero the 2-day-per-week accommodation that she requested. ECF No. 30-3 at 37.  Moreover, under the ADA, employers "should . . . request information about the condition" underlying the employee's accommodation and "what limitations the employee has." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1115 (9th Cir. 2000), *vacated on other grounds sub nom. US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).  A jury could not reasonably find actions to be adverse if the employer was merely engaging in activity that the ADA requires.  So these facts do not support a finding that Wynn failed to engage in the interactive process in good faith.

1    I thus grant Wynn's motion for summary judgment with respect to its interpretation of the

2    June 2023 doctor's recommendation. Accordingly, I deny as moot Bandiero's motion on this

3    issue.

4                    **B.        Bandiero raises no triable issue on Wynn's alleged disparate treatment.**

5    Bandiero's ADA disparate treatment claim is subject to the *McDonnell Douglas*[4] burden-

6    shifting analysis. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001).

7    The first step requires Bandiero to establish a prima facie case of discrimination. *Id.* To establish

8    a prima facie case of discrimination under the ADA, Bandiero must demonstrate that: (1) she is

9    disabled within the ADA's meaning; (2) she is a qualified individual able to perform the

10   essential functions of the job with reasonable accommodation; and (3) she suffered an adverse

11   employment action because of her disability. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th

12   Cir. 1996).

13   For disparate treatment claims under both Title VII and the ADA, an adverse

14   employment action is one that "materially affects the compensation, terms, conditions, or

15   privileges of employment." *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir.

16   2018) (quotation omitted); *see also Mattioda v. Nelson*, 98 F.4th 1164, 1173 (9th Cir. 2024)

17   (noting that "the ADA and Title VII use almost identical language" and "are also alike in their

18   purposes and remedial structures") (quotation omitted). Bandiero must also show that the

19   adverse employment action would not have occurred but for the disability. *See Murray v. Mayo

20   Clinic*, 934 F.3d 1101, 1104-07 (9th Cir. 2019) (overruling *Head v. Glacier Northwest, Inc.*, 413

21   F.3d 1053 (9th Cir. 2005)'s holding that ADA discrimination claims are evaluated under a

22   motivating factor causation standard and holding that a but-for causation standard applies).

23

───────────────────

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

If Bandiero presents a prima facie case, "the burden shifts to the defendant to produce some evidence demonstrating a legitimate, nondiscriminatory reason for" an adverse employment action. *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004). "An employer is required only to offer its honest reasons for its action, even if the reason is foolish, trivial, or baseless." *Mihailescu v. Maryville Nursing Home*, 339 F. App'x 717, 719 (9th Cir. 2009). If Wynn meets that burden, Bandiero "must then show that the defendant's alleged reason for [the employment action] was merely a pretext for discrimination." *Bodett*, 366 F.3d at 743. So at the summary judgment stage, if Wynn provides a legitimate and nondiscriminatory reason for a particular action, Bandiero must "provide[] sufficient evidence to support a finding of pretext." *Snead*, 237 F.3d at 1093. "She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (quotation omitted). "[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting [her] prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000). But the evidence of pretext "must be both specific and substantial to overcome the legitimate reasons put forth by" the defendant. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002), *as amended* (July 18, 2002) (simplified).

The parties agree that Bandiero was disabled within the ADA's meaning. Wynn does not move for summary judgment on whether Bandiero was a qualified individual. Wynn instead argues that Bandiero was not subject to disparate treatment because she did not suffer any adverse employment action. It also argues that Bandiero has provided no evidence that the

alleged adverse actions were because of her disability.  In her response and more fully in her own motion, Bandiero enumerates 14 different events that she claims constitute adverse employment actions under both ADA discrimination and ADA retaliation standards. ECF Nos. 27 at 22-24; 36 at 24-25.  She also responds that causation is a factual inquiry and that causation is established here because, though this is "not a scenario of a quick termination following a discovery of Plaintiff's disability," it is "more egregious than that" because Wynn's adverse actions occurred after it determined that "too much time has gone by" after Wynn and Bandiero entered into the Settlement Agreement. ECF No. 36 at 24 (simplified).

I already considered two of Wynn's alleged 14 adverse actions above as failure to accommodate claims.[5]  I limit my discussion in this section to whether the remaining 12 events constitute adverse actions under Bandiero's ADA disability claim and whether those events occurred because of Bandiero's disability.

### 1. *Vacation pay for 2021 and 2022*

Bandiero argues that Wynn subjected her to an adverse employment action when it failed to pay her vacation pay for 2021 and 2022 as she requested.  Wynn responds that it paid Bandiero all of the vacation pay it owed her.

Bandiero does not dispute that she received 40 hours of vacation pay for 2021. ECF No. 27 at 4.  Wynn argues that Bandiero was not entitled to more than 40 hours of vacation payout that year, citing the collective bargaining agreement. *See* ECF No. 32-4 at 100 ("Employee may not sell back more than five . . . days of vacation time.").  Bandiero does not dispute that the collective bargaining agreement applies to her 2021 vacation payouts. *See* ECF Nos. 36 at 18; 43

---

[5] Aside from constituting failures to accommodate, Bandiero provides no other reason that these two events were adverse employment actions for the purpose of ADA discrimination.

at 8.  Nor does she address Wynn's argument in her briefing.  Though she cites evidence that she demanded 56 hours of vacation pay for 2021 that Wynn never distributed to her, *see* ECF No. 27-1 at 32-37, she does not cite evidence that Wynn actually owed her this money.  So I grant Wynn's motion as to the 2021 vacation payout.

As for 2022, there is a genuine dispute whether Wynn owed Bandiero any vacation pay for that year. *See id.* at 43-44 (email from Wynn's Rule 30(b)(6) witness Gabriella Marquez indicating that Bandiero had "32 hours of vacation balance" as of July 6, 2022); *id.* at 76 (Marquez testifying that she directed a Wynn employee to distribute to Bandiero 32 hours of vacation pay and that there were no documents verifying that the payment was made); *but see* ECF No. 32-4 at 100 (imposing a 1,100 hour work requirement for an employee to sell back unused vacation pay).[6]  Because vacation pay is one of the privileges of Bandiero's employment, withholding vacation pay may constitute an adverse employment action under an ADA discrimination claim.

But even so, Bandiero has not made a prima facie case for causation.  Bandiero argues that Wynn's non-payment was because of her disability because Wynn's non-payment occurred a few months after Wynn and Bandiero executed the Settlement Agreement on December 2, 2021. *See* ECF Nos. 27 at 4; 27-1 at 39-48; 30 at 2.  Bandiero does not dispute that Wynn's failure to make her vacation payout for 2022 in July 2022 did not occur "on the heels" of its discovery that she was disabled. *Cf. Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (holding that temporal proximity may suffice to show prima facie causation only

---

[6] Bandiero argues I should disregard Wynn's citation to a collective bargaining agreement with a 2021 end date. *See* ECF No. 43 at 8.  I nevertheless will consider it because Bandiero relies on the same document to show that, for instance, failure to provide her a locker in 2023 was an adverse action. *See* ECF Nos. 36 at 24; 38 at 217-18.

1   if an adverse action "follows on the heels of protected activity"). So she cannot rely on temporal

2   proximity alone to establish but-for causation. Bandiero does not explain how this situation is

3   analogous to an adverse action following discovery of a person's disability. Nor does she cite

4   any evidence from which a reasonable jury could conclude that the Wynn employee responsible

5   for distributing vacation pay withheld her payout because of her disability.[7] So Bandiero has not

6   made out a prima facie case of causation.

7           Therefore, I grant Wynn's motion with respect to the 2021 and 2022 vacation payouts.

8   Accordingly, I deny as moot Bandiero's motion on this issue.

9                 *2.*     *March 2023 accommodation form requests*

10         Bandiero argues that Wynn subjected her to an adverse employment action when it

11   sought further information from her physician before modifying her accommodation in late

12   March 2023. Wynn responds that this request was necessary to determine the duration of her

13   accommodation and was part of the interactive process.

14         On March 27, 2023, Wynn sent Bandiero an acknowledgement of accommodation form

15   that allowed Bandiero to "report up to 3 absences per week" from April 3, 2023 until June 3,

16   2023 "subject to additional review and modification." ECF No. 27-1 at 180-81. Bandiero

17   declined to sign the acknowledgement form because she believed that it gave Wynn the ability to

18   "modify my accommodation whenever and however it wants." *Id.* at 179. On the same day that

19   Bandiero voiced this concern, Wynn's ADA administrator Ramirez replied that the language

20

21

22   [7] Bandiero argues that Wynn's position in its briefing (that Bandiero was owed no 2022 vacation payout) contradicts the testimony of Wynn's own employees (that Bandiero was owed 32 hours in 2022 vacation payout). Though this apparently contradictory position could be relevant for

23   showing pretext, I decline to reach this question because Bandiero has not made a prima facie case of but-for causation. Absent a showing of but-for causation, Bandiero is seemingly left with an ordinary breach of contract claim.

permitting modification of the accommodation was added because Ramirez had not received "the completed medical paperwork from [Bandiero's] physician," including information regarding the proposed duration of Bandiero's restrictions. *Id.* at 183.  Ramirez requested clarification about the duration before she could "review [Bandiero's] request." *Id.*  After Bandiero provided this information, Wynn modified the form to eliminate its right to alter the accommodation and to keep the accommodation in effect until June 3, 2023. *Id.* at 184.  Thus, Wynn granted Bandiero this accommodation. *See id.* at 208.

Even viewing the facts in Bandiero's favor, a jury could not reasonably conclude that this exchange was an adverse employment action for the purposes of ADA discrimination.  Bandiero was initially dissatisfied with the accommodation that Wynn offered.  In response, Wynn sought additional information before modifying it as Bandiero requested.  This exchange is part of the interactive process the ADA requires.  The mere fact that Wynn inquired into the support for Bandiero's medical documentation is not an adverse employment action. *See Campbell*, 892 F.3d at 1013 (affirming district court's finding that mere fact that employer investigated an employee, without evidence of a "resulting change to the conditions of her employment," was not an adverse employment action for the purposes of a disparate treatment claim under Title VII).  Even if this process did not go as smoothly as Bandiero may have anticipated, she does not point to a material term, condition, or privilege of her employment that this inquiry affected.  She ultimately received the accommodation she wanted.  Therefore, I grant Wynn's motion as to the March 2023 accommodation request.  Accordingly, I deny as moot Bandiero's motion on this issue.

### 3.    *Health card expiration*

Bandiero argues that Wynn subjected her to an adverse employment action when it failed to give her a 90-day notice that her health card was expiring, which resulted in her being placed

on "Suspension Pending Investigation." *See* ECF No. 36 at 7.  Wynn responds that Bandiero had ultimate responsibility for renewing her card.

In an April 3, 2023 email, Ramirez indicated to Bandiero that Bandiero could not return to work because her health card expired. ECF No. 27-1 at 208.  Wynn suspended her for two days because of the expired health card. *Id.* at 3 (noting "Suspension PAN" on April 3, 2023). Bandiero began working on April 21 after receiving her health card on April 12. ECF No. 27-2 at 87-88.

According to Wynn's written policy, Wynn will "assist employees by providing renewal reminders," but "employees are always ultimately responsible for maintaining their current work documents and licenses." ECF No. 27-1 at 210.  Wynn employees have access to an electronic notification and request system known as "the WIRE." *See, e.g.*, ECF Nos. 27-1 at 65, 72, 73, 98-99; 27-3 at 58.  Wynn's written policy states that "[m]anagement and employees will be notified of an expiring work document through The WIRE.  Notification will occur ninety (90) days in advance of the expiring work document." *Id.* at 211.

Bandiero does not argue that failure to receive a renewal reminder alone could constitute an adverse employment action.  She instead claims that the lack of a renewal reminder was an adverse action because it caused her suspension and loss of earnings.  Although these are adverse employment actions, a jury viewing the evidence in Bandiero's favor could not reasonably conclude that they occurred because of her disability.  Bandiero argues that she was suspended because her health card expired, and her health card expired because Wynn did not give her a 90-day renewal reminder.  Even assuming for the sake of argument that Bandiero did not have the ultimate responsibility to renew her health card, this timeline does not make out a prima facie case of causation.  Bandiero's health card expired in early April 2023, so any 90-day reminder

would have occurred in early January 2023.  Bandiero cites no evidence that Wynn's failure to provide notice in early January had anything to do with her disability.  The allegedly adverse actions involving Bandiero's return to work began in February 2023, well after Wynn would have made the decision to provide or withhold the renewal reminder.  These facts do not show but-for causation.

Even if Bandiero made out a prima facie case for causation, she does not rebut Wynn's evidence that Bandiero failed to receive the 90-day renewal reminder because she had no access to the WIRE, not because she was disabled.  Bandiero knew she had no access to the WIRE and had notice (via Wynn's written policy) that any 90-day reminder would come through the WIRE. *See* ECF No. 27-1 at 211.  Bandiero cites no evidence that these reasons for her failure to receive a reminder are pretextual.

I thus grant Wynn's motion with respect to the health card renewal.  Accordingly, I deny Bandiero's motion as to the health card renewal.

### 4.    *Guidance on April 2023 return date*

Bandiero argues that Wynn subjected her to an adverse employment action when it failed to give her adequate notice that she would resume work on April 3, 2023.  Wynn responds that Bandiero had adequate notice.

On March 1, 2023, Bandiero received an email from Wynn's legal counsel Bryan Cohen stating that Bandiero had to return to work as a cocktail server on March 22, 2023 in order to keep that position. ECF No. 27-1 at 158.  On March 22, Bandiero asked a Wynn manager about her return date, but the manager responded that she was waiting to hear from Wynn's ADA administration regarding the details of Bandiero's return. *Id.* at 174-177.  On March 27, Wynn sent Bandiero an acknowledgement of accommodation that provided a reduced schedule accommodation to Bandiero starting on April 3. *Id.* at 180-81; *see also id.* at 201 (Bandiero's

email to Cohen stating that "[y]our original ADA accommodations draft has a return to work date of 04/03/2023"). As noted above, Bandiero objected to some of the wording on this acknowledgement of accommodation in an email to Ramirez on March 28, with Ramirez ultimately asking for more medical documentation before approving Bandiero's desired accommodation. Bandiero voiced dissatisfaction with this process via email to Ramirez and Wynn CEO Craig Billings on Friday, March 31. *See id.* at 186-191, 197-203.

It is undisputed that Billings did not respond to this email and that Bandiero's next contact with Ramirez was on Monday, April 3. That Monday morning, Wynn's assistant director of cocktail services Tia Gibson left Bandiero a voicemail indicating that Bandiero was on the schedule that night. *Id.* at 205. Also that morning, Bandiero emailed Gibson and Ramirez indicating that she never received a schedule in response to her prior requests and that she "cannot be expected to return to work on less than 12 hours' notice." *Id.* Later that afternoon, Ramirez responded with Bandiero's work schedule, but indicated that Bandiero could not return to work because her health card was expired. *Id.* at 208. Ramirez conveyed that Bandiero would begin work on April 10 only if she renewed the health card. *Id.* Bandiero returned to work on April 21 after renewing her health card. ECF No. 27-2 at 87.

Bandiero does not argue that Wynn's failure to communicate her start date, by itself, constituted an adverse employment action. Bandiero instead argues that this communication failure was an adverse action because she lost compensation when her return date was pushed from April 3 to April 21. But even if this compensation loss constitutes an adverse action, a jury viewing the facts in Bandiero's favor could not reasonably conclude that Wynn's failure to communicate her return date to her was a but-for cause of her delayed return date and compensation loss. As discussed above, she could not return to work without her health card,

1  and Bandiero has not shown that expiration of her health card was causally related to

2  discrimination.  Regardless of whether Wynn adequately communicated Bandiero's start, she

3  would not have been able to work on April 3 without her health card.  Bandiero knew she was

4  seeking to return to work in March and thus had notice that she needed to renew the health card

5  to return to work.  Additionally, for the days past April 3, Bandiero does not cite evidence that

6  failure to receive notice of her schedule until April 3 caused her not to work until April 21.

7  Because Bandiero does not make a prima facie case for but-for causation, I grant Wynn's motion

8  with respect to Wynn's communications regarding her April 2023 return date.  Accordingly, I

9  deny Bandiero's motion as to those communications.

10              *5.      Failure to provide Bandiero appropriate shoes*

11         Bandiero argues that Wynn subjected her to an adverse employment action when it failed

12  to provide her shoes in her size upon her return to work.  Wynn responds that there was no

13  adverse action because Wynn provided her shoes and attempted to help her obtain shoes in her

14  size.  It also argues that Bandiero is not entitled to shoes under the collective bargaining

15  agreement.

16         The parties do not dispute that Bandiero provided her shoe size to Wynn employees

17  before her return to work in April 2023, that Bandiero did not receive shoes in her size upon her

18  return to work, and that Wynn has a policy of providing shoes to cocktail servers.  *See* ECF Nos.

19  27-1 at 12; 27-2 at 73-77; 32-5 at 5.  In some contexts, not receiving properly fitting equipment

20  essential for work may constitute an adverse employment action for the purposes of an ADA

21  disability claim.  For instance, a jury may find an adverse action if a fire department does not

22  make "any effort" to provide women with "adequately fitting protective clothing" for eight years

23  because "being required to work as a firefighter with inadequate protective clothing" over a

period of several years is not "a mere inconvenience" as a matter of law. *Wedow v. City of*

*Kansas City, Mo.*, 442 F.3d 661, 667, 671 (8th Cir. 2006).  Yet merely receiving subpar equipment does not constitute an adverse employment action. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1090 (9th Cir. 2008) (affirming a finding that receiving "inferior quality vest and gloves" does not constitute an adverse action without evidence that the inferior equipment affected the employee's work conditions).  Bandiero indicates that she had ill-fitting shoes upon her return, but that she subsequently obtained shoes on her own. ECF No. 32-1 at 16.  She notes that the ill-fitting shoes were "very hard to walk in," but she said she "did it," and she did not testify about how long she lacked properly fitting shoes. *Id.*  Though having to wear subpar footwear for a shift is doubtlessly an inconvenience, Bandiero has not made the prima facie case that her subpar shoes "affected her work conditions" for the purposes of an ADA discrimination claim. *See Davis*, 520 F.3d at 1090.

And even if she did, a jury viewing the evidence in Bandiero's favor could not reasonably conclude that Bandiero's disability was a but-for cause of her not receiving properly fitting shoes on her return to work.  Bandiero cites no evidence that Tia Gibson, the Wynn employee who arranged for Bandiero to receive shoes, discriminated against her. *See* ECF No. 27-2 at 74.  Instead, Bandiero testified that she did not follow up with Gibson after the initial incident, that Bandiero found alternative shoes, that no one refused to help her find shoes, that "no one was rude about it," and that Wynn "just . . . didn't have" the shoes in her size as the result of a "miscommunication." *See* ECF No. 32-1 at 17-18.  So she makes no prima facie case for but-for causation.

Moreover, Wynn provides evidence that the incident was due to a mistake.  Bandiero testified that the incident was the result of a "miscommunication." *See* ECF No. 32-1 at 18.  Indeed, Gibson "told [other cocktail servers] to tighten their straps before on their shoes." ECF

21

No. 44-6 at 10.  This evidence suggests that other employees sometimes received ill-fitting shoes.  In response, Bandiero provides no evidence that Wynn's reasons for Bandiero's shoe sizing issues are pretextual.  For instance, Bandiero cites no evidence that other Wynn cocktail servers were always "given better equipment" than the shoes she received. *See Davis*, 520 F.3d at 1090.  So Bandiero fails to show that Wynn's reasons are pretextual.

Therefore, I grant Wynn's motion as to Bandiero's work shoe issues.  Accordingly, I deny Bandiero's motion as to this issue.

### 6. *Inconsistent rest breaks*

Bandiero argues that Wynn subjected her to an adverse employment action when it denied her consistent rest breaks upon her return even after she reported the issue to Wynn employees.  Wynn responds that Bandiero was never refused a rest break.

Bandiero makes a prima facie case that Wynn subjected her to an adverse employment action by denying her rest breaks.  Bandiero avers that she was not allowed to take rest breaks "on numerous days" and that Wynn management never followed up on her complaint regarding breaks. ECF No. 27-1 at 13.  Bandiero reported to Wynn that she had issues "being allowed to take breaks." *See* ECF No. 27-2 at 85 (email dated June 8, 2023 from Carabeth Williamson, a Wynn employee relations counselor, to Bandiero).  Both parties agree that denial of mandatory rest breaks may constitute an adverse employment action. *See, e.g., Gonzales v. Marriott Int'l, Inc.*, 142 F. Supp. 3d 961, 985 (C.D. Cal. 2015) (holding that denial of mandatory lactation breaks could constitute adverse employment action for the purposes of discrimination claims under Title VII and California law).

But viewing the evidence in Bandiero's favor, a reasonable jury could not conclude that Wynn's failure to give Bandiero certain rest breaks was because of her disability.  Bandiero cites evidence that Wynn's employee relations counselor Carabeth Williamson investigated her rest

22

break issues in June 2023. *See* ECF No. 27-2 at 85.  But Bandiero cites no evidence that the managers in charge of giving her breaks denied her breaks because of her disability.  Her affidavit does not state why she was denied breaks, which supervisors denied her breaks,[8] or whether those supervisors displayed discriminatory animus. ECF No. 27-1 at 13.  She thus does not make a prima facie case for but-for causation.

Additionally, Wynn contends it did not intentionally refuse Bandiero a break and that any break issues were due to scheduling logistical issues that impacted other cocktail servers similarly. *See, e.g.*, ECF No. 44-7 at 10 (Bandiero's former manager, Kane Kent, testifying that he did not recall Bandiero informing him that she could not take a break and that he and his fellow employees "try our best to . . . make sure that [employees are] taking their breaks"); ECF No. 32-6 at 12 (Wynn director Chris Boylan testifying that servers taking their breaks "too early" "kind of threw out the break schedule").  Bandiero cites no evidence that this explanation is pretextual.

I thus grant Wynn's motion for summary judgment as to the rest break issue.  Accordingly, I deny as moot Bandiero's motion on this issue.

### 7.    *Parking access*

Bandiero argues that Wynn subjected her to an adverse employment action when it did not provide her access to employee parking for six weeks after her return to work.  Wynn responds that Bandiero was always able to park in the free guest parking and that Bandiero was frequently able to park in employee parking.

---

[8] Williamson identified one supervisor who Bandiero apparently complained about, but there is no further information about whether this supervisor knew about Bandiero's disability or why the supervisor denied rest breaks. *See* ECF No. 27-22 at 85.

Viewing the facts in Bandiero's favor, a jury could not reasonably conclude that her inability to access employee parking during the first few weeks of her employment is an adverse employment action for the purposes of ADA discrimination. Bandiero does not dispute that she was able to park in guest parking for free and that she was able to park in employee parking after the first two weeks because security recognized her. *See* ECF No. 32-1 at 19-20, 25-26. Bandiero cites no evidence that she was subject to substantial work interruptions as a result of not having access to employee parking. Bandiero relies on *Chuang v. University of California Davis, Board of Trustees* to support her argument that denial of employee parking constitutes an adverse action. But that case involved researchers having their laboratory permanently relocated to an inferior location resulting in a "calamitous effect on their research programs." 225 F.3d at 1123, 1125. Bandiero's situation is distinguishable because her parking issues were temporary and did not impact her daily work. So Bandiero has not made a prima facie case of adverse action.

Additionally, Bandiero cites no evidence of but-for causation. And Wynn cites evidence that a computer error related to Bandiero's onboarding caused Bandiero not to have access to employee parking. ECF No. 44-6 at 12. Bandiero testified that when she reached out to Wynn's Staff Services, they had an "immediate solution" to her parking problem. *See* ECF No. 32-1 at 26. These facts fail to show that Wynn's explanation is pretextual.

I thus grant Wynn's motion as to the parking issue, and I deny as moot Bandiero's motion on this issue.

### 8. Emails to the ADA department prior to expiration of Bandiero's accommodation in June 2023

Bandiero argues that Wynn subjected her to an adverse employment action when Bandiero had to "deal with Wynn Las Vegas' ADA department" after it ignored her

communications regarding her accommodation. ECF No. 27 at 23.  She claims this interaction

resulted in Bandiero "having to keep her management team apprised of her private health

information and explain that she would be using attendance points." *Id.*  Wynn responds that

interactions with the ADA department do not constitute an adverse employment action.

Viewing the facts in Bandiero's favor, a jury could not reasonably conclude that the

interactions that Bandiero cites constitute an adverse employment action for the purpose of ADA

disability.  This interaction stems from an email Bandiero sent on May 30, 2023 to Wynn's ADA

administrator Ramirez asking her to "update" Bandiero's accommodation form to reflect the fact

that Bandiero returned to work on April 21, not on April 3 as stated on the accommodation form.

*See* ECF No. 27-2 at 87-88.  Bandiero sought this clarification because her accommodation was

to be reevaluated every two months, and her accommodation was set to end a few days later on

June 3 according to the accommodation form. *Id.* at 87-88, 90.  On June 3 and 4, Bandiero

reached out to Wynn manager Kane Kent because she did not receive any response from the

ADA department. *See* ECF No. 27-2 at 98-103.  Wynn does not cite any response regarding

Bandiero's request prior to Wynn providing two different accommodation approvals on June 6.

*See* ECF No. 38 at 120, 123.  But Bandiero does not indicate how this alleged delay in

correspondence impacted material aspects of her employment.  Nor does Bandiero cite evidence

showing such an impact or that she was actually assessed an attendance point as a result.  So I

grant Wynn's motion as to this correspondence and deny as moot Bandiero's motion on this

issue.

9.    *Work locker*

Bandiero argues that Wynn subjected her to an adverse employment action when it failed

to provide her a work locker for the first year of her return.  Wynn responds that it did not assign

her a new locker location due to an oversight.

A week before Bandiero returned to work in April 2023, Wynn assistant director of cocktail services Tia Gibson informed Bandiero that her locker would be moved to a new location. ECF No. 38 at 93. Wynn does not dispute that Bandiero was not issued a locker until July 2024. *See* ECF No. 30-2 at 66 (email date July 19, 2024 from Gibson stating that Wynn "missed issuing" Bandiero a locker "when she transferred" to her position at the Encore). I will assume for the sake of argument that being required to work as a cocktail server without an assigned locker for a year may constitute an adverse employment action. *See Wedow*, 442 F.3d at 671 (affirming jury verdict that failure to provide women firefighters a work locker room over an eight-year period was an adverse employment action, not a mere inconvenience).

But even viewing the facts in Bandiero's favor, a jury could not reasonably conclude that Wynn's failure to issue her a locker was due to her disability. To show causation, Bandiero argues that Wynn's "refus[al] to provide her with a locker for over a year" occurred "after she decided to return to work with accommodations." ECF No. 36 at 28. But she does not point to evidence that Gibson, the Wynn employee responsible for giving her a locker, failed to give her a locker "on the heels of" her discovery of Bandiero's condition. *See Villiarimo*, 281 F.3d at 1065. Mere temporal proximity thus cannot establish prima facie causation here. And Bandiero cites no other evidence from which a jury could conclude that Gibson or any other employee involved acted on discriminatory intent. So Bandiero makes no prima facie case for causation.

And even if she did, Bandiero cites no evidence of pretext to rebut Wynn's contention that her locker was not transferred to her new assignment due to an administrative oversight. *See* ECF Nos. 30-2 at 66; 44-6 at 8. For instance, Bandiero does not cite evidence that she followed up to receive a locker but was turned away. I thus grant Wynn's motion as to the locker assignment and deny as moot Bandiero's motion on this issue.

### 10.    *Work station assignment*

Bandiero argues that Wynn subjected her to an adverse employment action when it failed to assign her a work station during her shifts, causing her to lose earnings.  Wynn responds that Bandiero had a work-station allocation similar to that of other Wynn employees and that she does not have evidence of lost earnings.

Bandiero contends that her lack of a work station caused her to "lose out on earnings." ECF No. 27 at 24.  She sent an email to Wynn director Christopher Boylan indicating that there were "scheduling errors" and lack of a "smooth transition" when Bandiero began her shift that resulted in "frustration" to Bandiero and her coworkers. ECF No. 27-3 at 144-45; *see also id.* at 149 (Bandiero's email to Wynn management indicating "drama going on at work" due to "schedules, sections, rotations" being "messed up").  On July 12, Bandiero reported to Wynn manager Kane Kent that she was not "provided with a station" during her shift and that, as a result, she was "just standing here" unable to work. *Id.* at 148.  Bandiero went on to catalogue several instances where she was not provided a station in March and June. *Id.* at 146-47.  This evidence suffices to show a genuine dispute regarding whether Bandiero lost out on potential earnings (e.g., tips) due to these interruptions.  So Bandiero has made a prima facie case that she was subject to an adverse employment action relating to her work-station assignment.

But viewing the evidence in Bandiero's favor, a jury could not reasonably conclude that her lack of a work-station assignment was because of her disability.  The emails that Bandiero cites do not discuss Bandiero's disability, and several of the emails instead seek solutions to the problems that Bandiero had with her station.  So Bandiero fails to make a prima facie case for causation.

Further, Bandiero cites no evidence of pretext to rebut Wynn's contention that all Wynn cocktail servers were subject to the same scheduling challenges that Bandiero faced. *See* ECF

No. 30-6 at 11-12 (Wynn director Christopher Boylan stating that the station allocation issues that Bandiero described were "centered around Fridays in general with every single server"); *see also* ECF No. 27-3 at 149 (Bandiero's email stating that another employee also had "drama" related to schedules being "messed up" and as a result, the other employee "had to go on first hour break"). Therefore, I grant Wynn's motion as to Bandiero's work-station assignment and deny as moot Bandiero's motion on this issue.

11.    *August 2023 communications regarding questions to Bandiero's physician*

Bandiero argues that Wynn subjected her to an adverse employment action in August 2023 when Wynn management told her to "have her physician answer incredibly unproductive questions such as if she will ever be able to work a 5-day work week and exactly how long she is going to need a modified work schedule." ECF No. 27 at 24. Wynn responds that its management addressed Bandiero's concerns and that it is permitted to seek additional information from Bandiero's physician.

Viewing the evidence in Bandiero's favor, a jury could not reasonably conclude that asking her for additional information from her doctor is an adverse employment action. The interaction with Wynn management that Bandiero describes involves a disagreement about the proper interpretation of her physician's accommodation recommendation and about the duration of her accommodation. *See* ECF No. 27-3 at 115. Bandiero's physician testified that questions regarding the duration of Bandiero's accommodation would not be "productive." ECF No. 27-2 at 216. But Bandiero cites no evidence that this inquiry impacted the conditions or terms of her employment. And an employer may seek medical information from an employee as part of the interactive process. *See Humphrey*, 239 F.3d at 1137 (requiring "good-faith exploration of possible accommodations between employers and individual employees"). So I grant Wynn's

motion as to its communications regarding Bandiero's physician's recommendation and deny as moot Bandiero's motion on this issue.

### 12.    *August 2024 attempted shift change*

Bandiero argues that Wynn subjected her to an adverse employment action when she had to deal with Wynn "attempting to unilaterally alter her bidded shift and place her into another employee's shift without consultation." ECF No. 27 at 24.  Wynn responds that this communication was an ordinary workplace interaction and that other employees were impacted by the scheduling issue.

Viewing the evidence in Bandiero's favor, a jury could not reasonably conclude that the possibility of a shift change is an adverse employment action for the purposes of ADA discrimination.  Bandiero cites one instance in August 2024 where Wynn attempted to alter the shift she had bid on. ECF No. 27-3 at 151-52.  But Bandiero does not argue that her shift was actually changed. *See* ECF No. 43 at 11; *see also* ECF No. 32-1 at 37.  She argues that the attempted shift change caused her "stress." ECF No. 43 at 11.  But merely causing stress on a single occasion is not an adverse employment action for the purposes of ADA discrimination.

Additionally, Bandiero does not indicate how this incident from August 2024 is causally related to the alleged instances of discrimination from 2023.  So she fails to make a prima facie case for causation.

Even if she did, Wynn argues that the potential schedule change was due to a business restructuring for a "24-hour operation." *See* ECF No. 44-9 at 12.  Bandiero cites no evidence of pretext to rebut Wynn's contention that other employees were subject to the same potential schedule changes that Bandiero faced. *See* ECF No. 32-6 at 16-17 (Wynn director Christopher Boylan testifying that "other employees were impacted with this schedule" and that "bartenders that were impacted by this, bus runners that were impacted by this, and servers as well").

1    So I grant Wynn's motion as to the attempted shift change and deny as moot Bandiero's

2    motion on this issue.

3        ***C.  Conclusion***

4      In sum, Bandiero has not carried her burden with respect to any alleged adverse action for

5    the purposes of ADA discrimination.  I thus grant Wynn's motion with respect to Bandiero's

6    ADA discrimination claim and her Nevada discrimination claim.  And I deny as moot Bandiero's

7    motion for summary judgment on whether she is a qualified individual and whether any of the

8    alleged events constitute an adverse employment action for the purposes of ADA discrimination.

9    **III. Wynn is entitled to partial summary judgment on Bandiero's ADA retaliation**
    **claim, and Bandiero's motion for summary judgment as to this claim is denied.**

10

11      Wynn moves for summary judgment on Bandiero's ADA retaliation claim.  Bandiero

12    moves for summary judgment on the issue of whether the incidents she alleges are adverse

13    actions for the purpose of ADA retaliation.

14      The ADA prohibits retaliation against an individual who engages in certain activities

15    protected by the ADA. *See* 42 U.S.C. § 12203(a).  To prove an ADA retaliation claim, "a

16    plaintiff must make out a prima facie case (a) that he or she was engaged in protected activity,

17    (b) that he or she suffered an adverse action, and (c) that there was a causal link between the

18    two." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015)

19    (quotation omitted).  "Pursuing one's rights under the ADA constitutes a protected activity."

20    *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004).  Requesting a reasonable

21    accommodation also constitutes protected activity under the ADA. *See Valtierra v. Medtronic*

22    *Inc.*, 232 F. Supp. 3d 1117, 1126 (D. Ariz. 2017) (citing *Coons v. Sec'y of U.S. Dep't of*

23    *Treasury*, 383 F. 3d 879, 887 (9th Cir. 2004) for its holding that requesting a reasonable

accommodation was protected activity under the Rehabilitation Act, which uses the same

1  standards to analyze discrimination claims as the ADA) (*aff'd*, 934 F.3d 1089 (9th Cir. 2019)).

2  If Bandiero makes out a prima facie case, I then apply the rest of the *McDonnell Douglas*

3  burden-shifting framework to her ADA retaliation claim. *T.B. ex rel. Brenneise,* 806 F.3d at 472-

4  73.

5         Wynn does not dispute that Bandiero engaged in protected activity by pursuing her rights

6  under the ADA.  Instead, it argues that the retaliation claim fails because Bandiero has identified

7  no adverse action.  Wynn also argues that Bandiero has not shown any causal connection

8  between her protected activity and any alleged adverse action.  Bandiero responds by citing the

9  adverse actions discussed above.  She also argues that temporal proximity between the adverse

10 actions and her protected activity suffices to show a causal connection between them.

11         **A.    *Prima facie case***

12         1.    *Adverse Action*

13         Wynn contends that Bandiero's alleged adverse actions have no potential deterrent effect

14 on a reasonable employee because they are distinguishable from the adverse actions present in

15 *Pardi*, 389 F.3d at 850.  Wynn argues that *Pardi* stands for the proposition that "frustrations of

16 regular processes and standard procedures" cannot constitute adverse actions under ADA

17 retaliation. ECF No. 30 at 22.  Wynn also contends that because the actions Bandiero relies on do

18 not count as adverse actions for the purposes of ADA discrimination, they "certainly will not rise

19 to the higher retaliation standard." ECF No. 44 at 14.  Bandiero responds that the evidence shows

20 several instances of "discrete acts of retaliation, all of which can constitute adverse actions."

21 ECF No. 36 at 27.

22         In the Title VII framework applicable to ADA claims, even if an adverse action is

23 "insufficient to sustain a prima facie case of disparate treatment," a "retaliation claim[] may be

brought against a much broader range of employer conduct than substantive claims of

31

1  discrimination." *Campbell*, 892 F.3d at 1021.  In particular, a "retaliation claim need not be

2  supported by an adverse action that materially altered the terms or conditions of the plaintiff's

3  employment." *Id.*

4        But a retaliation claim must be supported by an action that was "materially adverse" to

5  the employee. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  A materially

6  adverse employment action is one that "is reasonably likely to deter employees from engaging in

7  protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1237 (9th Cir. 2000).  "Material"

8  adversity includes "significant" harms but excludes "trivial harms," "ordinary tribulations of the

9  workplace," or "those petty slights or minor annoyances that often take place at work and that all

10  employees experience." *Burlington*, 548 U.S. at 68 (simplified).  This standard is objective, so it

11  looks to whether the adverse action would have dissuaded a "reasonable employee." *Id.*

12        Wynn argues that Bandiero fails to show any adverse action constituting ADA retaliation

13  because she fails to show any adverse action under ADA discrimination.  But the caselaw does

14  not support that entailment. *See Campbell*, 892 F.3d at 1021.  So whether incidents that Bandiero

15  cites are adverse actions for the purpose of ADA retaliation is a separate question.

16        As discussed above, Bandiero cites no evidence that she is actually entitled to vacation

17  pay for 2021.  So failure to distribute her 2021 vacation pay is not an adverse action for the

18  purpose of ADA retaliation.

19        Bandiero cites no evidence that Wynn's attempt to change her shift in August 2024

20  resulted in anything more than stress.  Because she does not point to evidence that this incident

21  involved more than an ordinary annoyance with work scheduling, the attempted shift change in

22  August 2024 is not an adverse action for the purpose of ADA retaliation.  Additionally, Bandiero

23  fails to make a prima facie case of but-for causation as discussed above.

The incidents involving the June 2023 doctor's recommendation, the March 2023 accommodation form requests, and the August 2023 questions to Bandiero's physician all involved Wynn engaging in the interactive process with Bandiero. For the reasons discussed above, a reasonable employee would not be deterred by an employer's ADA-required activity. So those incidents are not adverse actions for the purpose of ADA retaliation.

Additionally, Bandiero argues that communication delays constituted adverse actions in two instances: when she sought guidance on her return date in April 2023 and when she sent emails to Wynn's ADA department prior to the expiration of her accommodation in June 2023. Bandiero does not allege that the communication delays lasted more than a week. She does not cite evidence that other persons received quicker responses from the ADA department. And Wynn provided Bandiero an accommodation after both exchanges. These circumstances do not constitute actions that a reasonable employee would view as materially adverse. *See Freelain v. Vill. of Oak Park*, 888 F.3d 895, 904-05 (7th Cir. 2018) (affirming district court's finding that a three-month delay in approval of an employee's "request for approval of secondary employment" was not a "materially adverse employment action" under ADA retaliation because plaintiff provided no evidence that he was "singled out for a slow-walk because he exercised his rights" under the ADA); *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 40-41 (1st Cir. 2011) (affirming district court's finding that employer's delayed approval of an employee's request to participate in a workshop did not constitute an adverse employment action under ADA retaliation, even if the delay was intentional, because the employee failed to show a "significant, not trivial, harm" that rose above a mere "inconvenience") (simplified).

However, there is a genuine dispute whether Wynn's interactions with Bandiero in February 2023 constitute adverse actions for the purpose of ADA retaliation. Even if Bandiero

was not actually terminated in February 2023, she presents evidence that she requested to return

to work starting on March 14, 2023 but Wynn's ADA department responded that it could not

accommodate her with indefinite leave and she would have to either engage in the 30-day job

search or be terminated. *See* ECF No. 27-1 at 153; ECF No. 28-3 at 5 (recommending a return

day of March 13, 2023). A jury could reasonably conclude that Wynn mischaracterizing her

leave request and threatening a job change or termination despite a request to return to her

former job by a date certain would deter a reasonable employee from engaging in protected

activity. Wynn does not cite caselaw showing that this incident could not have a deterrent effect

on a reasonable employee as a matter of law. So Bandiero has made a prima facie case that this

incident constitutes an adverse action.

Because I resolve the remaining incidents on other grounds explained below, I will

assume for the sake of argument that the remaining incidents that Bandiero alleges may

constitute adverse actions for the purposes of ADA retaliation.

I thus grant Wynn's motion for summary judgment as to Bandiero's ADA retaliation

claim based on (1) her request for 2021 vacation pay, (2) the attempted August 2024 shift

change, (3) the June 2023 doctor's recommendation, (4) the March 2023 accommodation form

requests, (5) the August 2023 questions to her physician, (6) the April 2023 return date guidance,

and (7) Bandiero's June 2023 emails to the ADA administrator prior to expiration of her

accommodation.

### 2. *Causation*

Wynn argues that Bandiero has failed to establish a but-for causal connection between

her alleged adverse actions and her protected activity. Bandiero responds that the temporal

proximity of the alleged actions and her protected activities is sufficient to create a genuine

dispute regarding causation. In particular, she claims that her failure to receive 2021 vacation

pay occurred immediately after she signed a Settlement Agreement with Wynn regarding her

disability; Wynn fired her "mere weeks" after she sought an extension of her leave of absence;

Wynn imposed discipline points "mere weeks" after she sought an extension of her

accommodations; and Wynn failed to provide her a locker after she returned to work with

accommodations. ECF No. 36 at 28.

"Causation sufficient to establish the third element of the prima facie case may be

inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff

engaged in protected activities and the proximity in time between the protected action and the

allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.

1987).  For example, in *Yartzoff*, temporal proximity established causation where the adverse

actions occurred less than three months after the plaintiff's administrative complaint, two weeks

after investigation of the charge, and less than two months after the investigation ended. *Id.*  But

temporal proximity must be "very close" to be sufficient evidence of causality to establish a

prima facie case. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quotation

omitted).  In *Breeden*, the Supreme Court approvingly cited a case where a three-month time

lapse was too long to show causation on its own. *Id.* (citing *Richmond v. ONEOK, Inc.*, 120 F.3d

205, 209 (10th Cir. 1997)).  So if an adverse employment action does not follow "on the heels of

protected activity"—less than three months after the protected activity—then additional evidence

of causation beyond temporal proximity is required. *See Villiarimo*, 281 F.3d at 1065.

As discussed above, Bandiero does not point to evidence that Wynn's failure to provide

notice in early January of expiration of her health card had anything to do with her disability.

Similarly, because the health card reminder had no temporal proximity to any protected activity,

failure to remind her could not have been retaliatory.  So Bandiero does not state a prima facie

case as to her health card reminder. I thus grant Wynn summary judgment as to the health card reminder incident.

Bandiero also provides no evidence that Wynn's failure to distribute her 2022 vacation payout was causally related to any protected action. Bandiero and Wynn entered the Settlement Agreement in December 2021, nearly seven months before she requested the vacation payout in July 2022. Seven months is too long to establish causation by temporal proximity alone. Because Bandiero cites no other evidence that her disability caused the non-payment, she fails to make out a prima facie case of but-for causation. I thus grant Wynn summary judgment as to the 2022 vacation payout.

In sum, I grant Wynn's motion for summary judgment as to (1) the health card reminder incident and (2) issuance of her 2022 vacation payout.

The remainder of the incidents appear to fall within three months of either Bandiero's December 2021 Settlement Agreement, her return-to-work accommodation requested in January 2021, or her accommodation and accommodation extensions granted in April, June, and August 2023. Wynn does not dispute that these events were protected activities. Whether Bandiero's temporal proximity theory suffices to make out a prima facie case is a close question for several of these incidents. But because I can resolve Wynn's motion more simply at the *McDonnell Douglas* burden-shifting stage of analysis, I will assume for the sake of argument that Bandiero makes a prima facie case of but-for causation as to the remaining incidents.

### B. **McDonell Douglas** *burden shifting*

If Bandiero makes a prima facie case for causation, then under *McDonnell Douglas*, the burden shifts to Wynn to show a legitimate and nondiscriminatory reason for what happened. If Wynn does so, then Bandiero must point to evidence of pretext. "In some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of

1  both the prima facie case and the showing of pretext." *Dawson v. Entek Int'l*, 630 F.3d 928, 937

2  (9th Cir. 2011).  In *Dawson*, the plaintiff presented evidence that his coworkers used derogatory

3  language referencing his sexual orientation during his employment and that his supervisors failed

4  to address it despite knowing about it. *Id.* at 932-33.  The plaintiff reported these incidents to his

5  employer's human resources personnel and was terminated two days later, "ostensibly because

6  of his failure to call properly before missing work." *Id.* at 933-34.  The district court granted

7  summary judgment to the employer. *Id.*  The Ninth Circuit reversed the district court's grant of

8  summary judgment, reasoning that the "gravity of [the plaintiff's] complaints coupled with the

9  time frame are such that a reasonable trier of fact could find in favor of" the plaintiff on his Title

10  VII retaliation claim. *Id.* at 937.[9]

11      Although temporal proximity may sometimes show pretext, temporal proximity is

12  "ordinarily insufficient to satisfy the secondary burden to provide evidence of pretext." *See*

13  *Hooker v. Parker Hannifin Corp.*, 548 F. App'x 368, 370 (9th Cir. 2013) (applying the

14  *McDonnell Douglas* framework to California retaliation claim).  For instance, the Ninth Circuit

15  has affirmed summary judgment against a plaintiff who "establish[ed] a prima facie case of

16  discrimination," reasoning that his "only evidence of discrimination was the temporal proximity

17

18  _____

[9] *See also Bell v. Clackamas Cnty.*, 341 F.3d 858, 866 (9th Cir. 2003) (finding plaintiff provided sufficient evidence of pretext, where "the temporal proximity [of four days] between Bell's complaints and the alleged adverse employment actions, together with evidence of [two of his supervisors'] contemporaneous displeasure with Bell's complaints of May 18 regarding racial comments and racial profiling, provides strong circumstantial evidence of retaliation"); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731-32 (9th Cir. 1986) (finding plaintiffs provided sufficient evidence that employer's rationale that it laid off the plaintiffs due to "economic necessity" was pretext at summary judgment stage, where plaintiff provided evidence that (a) the employer's personnel who laid off the plaintiffs knew the plaintiffs engaged in protected activity because they participated in settlement negotiations with the plaintiffs, (b) the layoff occurred two months after the settlement agreement, and (c) the plaintiffs were the only employees laid off).

of his termination to his medical leave, which is insufficient to prove pretext." *Huck v. Kone, Inc.*, 539 F. App'x 754, 755 (9th Cir. 2013) (applied to California disability claim).

### 1.    Legitimate and nondiscriminatory reason

Wynn's general justification for the events Bandiero cites is that Bandiero faced "administrative and practical issues" that any Wynn employee would experience after they "return[ed] to work after a lengthy leave of nearly two years." ECF No. 30 at 17-18. As discussed above, Wynn also provides specific reasons for certain individual events.

Honest administrative errors may serve as a legitimate, nondiscriminatory reason for an employer's action. *See, e.g., Campbell v. Dep't of Hum. Servs.*, 384 F. Supp. 3d 1209, 1224-25 (D. Haw. 2019) (holding that an employer's "mistaken belief" that it was not the employee's turn for a promotion sufficed as a legitimate and nondiscriminatory reason for failing to promote him). Wynn cites evidence of administrative errors due to Bandiero's return from leave and other managerial difficulties with regard to failures to (1) provide shoes in her size, (2) provide her rest breaks, (3) provide her employee parking, (4) provide her a locker, and (5) allocate her a work station. This evidence also suggests that several of these administrative errors impacted other nondisabled employees. Wynn thus provides legitimate and nondiscriminatory reasons for these incidents.

As for the February 2023 communications regarding Bandiero's return to work, Wynn cites evidence that, based on its understanding of the relevant caselaw, it was entitled to determine that Bandiero was effectively seeking to extend her leave indefinitely. *See* ECF No. 37 at 190. Wynn maintains that such an indefinite leave would not be a reasonable accommodation as a matter of law. *See LeBarron v. Interstate Grp., LLC*, 529 F. Supp. 3d 1163, 1172 (D. Nev. 2021) ("[T]he ADA does not require an indefinite, lengthy, unpaid leave of absence especially when the employer does not know when the employee will be able to return to duty.")

38

(simplified).  So Wynn provides a legitimate and nondiscriminatory reason for its initial decision to offer a 30-day job search to Bandiero in February 2023.  Because Wynn provided a legitimate and nondiscriminatory response for the remaining incidents, the burden shifts to Bandiero to show pretext.

### 2.    Pretext

Bandiero's opposition brief relies primarily on the temporal proximity between Bandiero's protected actions and Wynn's alleged adverse actions to show both prima facie causation and pretext. *See* ECF No. 36 at 27-28.  Elsewhere in her brief, Bandiero also suggests that Wynn's discriminatory animus is "continuously displayed in Defendant's own emails to Plaintiff, along with its refusal to simply admit the truth with respect to how badly the company has treated her in terms of providing her basic work necessities like rest breaks, shoes, and a locker." ECF No. 36 at 24-25.  She cites her testimony that during a February 2023 phone call, Wynn's ADA administrator Eva Ramirez told Bandiero that "'[w]e don't want you working here anymore.  We don't want cocktail waitresses who have lupus.  Lupus cocktail waitresses can't handle the job.'" ECF No. 38 at 19.

Bandiero points to evidence that Ramirez expressed animus towards her due to her disability during the February 2023 phone call.  According to Bandiero's testimony, Ramirez said during the call that people with lupus were unable to work as cocktail servers at Wynn.  Viewing the evidence in her favor, a jury may reasonably conclude from this evidence that a "discriminatory reason more likely motivated the employer" and that Wynn's justification is pretextual. *See Snead*, 237 F.3d at 1093-94.  Therefore, I deny Wynn's motion as to the February 2023 return-to-work interaction.

That leaves the incidents involving failure to provide Bandiero (1) shoes in her size, (2) rest breaks, (3) employee parking, (4) a locker, and (5) a work station.  As noted above,

temporal proximity by itself is generally not sufficient to show pretext. Bandiero does not cite any further evidence to show pretext as to these issues. Nor does she provide any explanation for why temporal proximity is specifically indicative of pretext in this context. Though Bandiero points to Ramirez's alleged remark in February 2023, Wynn managers or directors in non-ADA departments appeared to be responsible for handling these issues, not Ramirez. Bandiero thus has not met her burden to show a genuine factual dispute regarding pretext as to these actions. I thus grant Wynn's motion for summary judgment as to these five incidents.

### C.    Conclusion

In sum, I deny Wynn's motion for summary judgment on Bandiero's ADA retaliation claim as to the February 2023 return-to-work interaction. I grant Wynn's motion for summary judgment as to all other adverse actions that Bandiero alleges as a basis for her ADA retaliation claim.

Because I have granted summary judgment in Wynn's favor on all but the February 2023 return-to-work interaction, that is the only incident that is not moot in relation to Bandiero's motion for summary judgment. But there are several disputes of material fact at play, such as whether Bandiero was effectively seeking indefinite leave, whether Ramirez actually said what Bandiero testified she said, and whether a reasonable person would be deterred from engaging in protected activity if they were asked to engage in a 30-day job search. Those are questions for the jury to decide. So I deny Bandiero's motion as to the ADA retaliation claim.

### IV.    Wynn is entitled to summary judgment on Bandiero's retaliatory hostile work environment claim.

Wynn argues that Bandiero may not pursue a hostile work environment claim under ADA disparate treatment because her complaint lacks reference to such a theory and her alleged adverse actions are not sufficiently severe or pervasive to constitute a hostile work environment.

1    Bandiero responds that she is asserting a hostile work environment theory to support her ADA

2    retaliation claim, not her ADA disparate treatment claim. She argues that her complaint alleges

3    that the Wynn ADA department repeatedly harassed her in retaliation for her protected activities

4    under the ADA. She also argues that this harassment was severe and pervasive because she was

5    not provided appropriate shoes, credentials, a locker, rest breaks, or a work station.

6        A hostile work environment claim is ordinarily brought as a theory of discrimination. To

7    show a discriminatory hostile work environment claim under the ADA, a plaintiff must show

8    "that he was subjected to harassment because of his disability, and that the harassing conduct

9    was sufficiently severe or pervasive to alter the conditions of his employment and create an

10    abusive work environment." *Mattioda*, 98 F.4th at 1174 (simplified). A discriminatory hostile

11    work environment thus requires that the harassment occur because of the plaintiff's disability.

12    But in the Title VII caselaw that is also applicable to ADA claims, the Ninth Circuit recognizes a

13    hostile work environment claim due to retaliation if the harassment is "based on retaliatory

14    motive and is reasonably likely to deter the charging party or others from engaging in protected

15    activity." *Ray*, 217 F.3d at 1245; *see also Mattioda*, 98 F.4th at 1173 (applying the hostile work

16    environment framework from Title VII claims to ADA claims because of the "almost identical

17    language" between the statues). A retaliatory hostile work environment requires that the

18    harassment occur because of the plaintiff's protected activity, not necessarily because of her

19    disability.

20        Both retaliatory and discriminatory hostile work environment theories require harassment

21    that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and

22    create an abusive working environment." *Mattioda*, 98 F.4th at 1175 (quotation omitted). "The

23    required showing of severity or seriousness of the harassing conduct varies inversely with the

1  pervasiveness or frequency of the conduct." *Id.* at 1175-76 (simplified).  "All the circumstances,

2  including the frequency of the discriminatory conduct; its severity; whether it is physically

3  threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

4  with an employee's work performance inform whether an environment is sufficiently hostile."

5  *Id.* at 1176 (simplified).  Though "simple teasing, offhand comments, and isolated incidents

6  (unless extremely serious)" do not create an actionable claim, "hostile conduct [that] polluted the

7  [plaintiff's] workplace, making it more difficult for him to do his job, to take pride in his work,

8  and to desire to stay in his position" supports a hostile work environment claim. *Id.* (simplified).

9  Hostile work environments do not arise from "ordinary tribulations of the workplace." *Faragher*

10  *v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation omitted).

11      Bandiero's complaint references retaliatory harassment. *See* ECF No. 1 at 22 (alleging

12  "retaliatory harassment" due to Wynn's requests for medical information), 8-9 (alleging that

13  Bandiero's February 2, 2023 call with Ramirez was "harassing"), 11 (alleging that Bandiero told

14  Wynn CEO Craig Billings about the "harassing nature" of her interactions with the Wynn ADA

15  department).  Because I resolve Wynn's motion on other grounds, I will assume that these

16  references allege a retaliatory hostile work environment claim.

17      As evidence of harassment, Bandiero cites her testimony that Ramirez told her that

18  people with lupus could not "handle" a job as a cocktail server during the February 2, 2023

19  phone call. *See* ECF No. 38 at 19.  But this isolated statement is insufficient to support a hostile

20  work environment claim on its own.  "[F]or a single incident to suffice, it must be extremely

21  severe." *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir. 2021) (quotation omitted).

22  Ramirez's alleged comment here is similar to telling an employee that "he should consider

23  finding a job in which the clientele is not mostly female." *See id.*  The Ninth Circuit held that

such a statement fails to show a hostile work environment based on gender discrimination,

noting that the Ninth Circuit has "deemed much harsher comments and actions insufficient to

create a hostile work environment." *Id.* at 648-49.  Though the alleged statement may be

"unquestionably offensive and insensitive" to Bandiero's condition, it is not sufficiently severe

to "create an actionable hostile work environment." *Id.* (citing *Manatt v. Bank of Am., NA*, 339

F.3d 792, 798 (9th Cir. 2003) (holding that an employee stated no hostile work environment

claim where coworker called employee a "China man" while pulling his eyes back with his

fingers in an attempt to mock the employee, even where employee's supervisor "smiled at the

comment")).

Nor does Bandiero cite evidence of pervasive harassment.  She alleges that Wynn failed

to provide her appropriate shoes, credentials, a locker, rest breaks, or a work station.  But she

cites no evidence that those incidents were "based on retaliatory motive." *See Ray*, 217 F.3d at

1242.  As noted above, she cites no evidence to rebut Wynn's contention that these issues were

either administrative mistakes or experienced by many nondisabled employees.  Bandiero

contends that Wynn's "animus" is "continuously displayed" in its own emails to her. ECF No. 36

at 24.  But Bandiero does not support that assertion with any specific citation to the record,

which contains many emails from Wynn employees.  Nor does she indicate why the content of

any of these emails rises to the level of retaliatory harassment as opposed to communications

indicative of ordinary tribulations of the workplace.  Therefore, I grant Wynn summary judgment

on Bandiero's retaliatory hostile work environment claim.

**V.      Bandiero may not seek punitive damages on her remaining ADA retaliation claim.**

Wynn argues that Bandiero cannot recover punitive damages because she provides no

evidence that Wynn acted with malice or recklessness regarding her ADA rights.  Bandiero

responds that punitive damages are appropriate because Wynn's communication with her in

1   February 2023 was part of a pattern and practice of misconduct.  She also claims that Wynn

2   knowingly failed to distribute her 2021 and 2022 vacation pay and knowingly failed to issue her

3   a locker for a year.

4          Bandiero may recover punitive damages under the ADA if she "demonstrates that

5   [Wynn] engaged in a discriminatory practice or discriminatory practices with malice or with

6   reckless indifference to" her rights under the ADA. 42 U.S.C. § 1981a(b)(1).[10]  But section

7   1981a does not permit punitive or compensatory damages for ADA retaliation claims. *Alvarado*

8   *v. Cajun Operating Co.*, 588 F.3d 1261, 1270 (9th Cir. 2009).  For that reason, "ADA retaliation

9   claims are redressable only by equitable relief." *Id.*

10         I granted summary judgment above on Bandiero's discrimination claims under the ADA

11  and Nevada discrimination law.  Only a portion of her ADA retaliation claim remains.  Because

12  that claim is not a basis for punitive damages under section 1981a, I grant Wynn's motion for

13  summary judgment on the issue of punitive damages.

14  **VI.    Bandiero is entitled to summary judgment on Wynn's exhaustion of remedies,
        statute of limitations, and after-acquired evidence rule defenses.**

15

16              *A.    Claim exhaustion (Wynn's second affirmative defense)*

17          Bandiero moves for summary judgment on Wynn's second affirmative defense that her

18  claims are barred for failure to exhaust her administrative, statutory, and contractual remedies.

19  *See* ECF No. 13 at 17-18.  Bandiero argues that she satisfied the ADA's administrative

20  exhaustion requirement under 42 U.S.C. § 12117(a) because she filed a timely charge alleging

21  ADA disability and retaliation. *See* ECF No. 27-3 at 118-20.  She claims that her allegations in

22  this suit are either mentioned in the charge or reasonably stem from it.

23

---

[10] Bandiero does not cite any other legal basis for punitive damages.

1    Wynn responds that it should be able to argue at trial that Bandiero's suit is contractually

2 barred.  It also asserts that whether Bandiero's hostile work environment claim reasonably stems

3 from her charge is a factual dispute.  And it claims that "other types of alleged discrimination

4 impact this litigation which were not exhausted" in the charge, such as sexual harassment, and

5 that it should be able to argue that this discrimination, not disability discrimination, accounts for

6 some of the "damages Plaintiff seeks to recover." ECF No. 32 at 18.

7    "An individual plaintiff must first file a timely EEOC complaint against the allegedly

8 discriminatory party before bringing an ADA suit in federal court." *Josephs v. Pac. Bell*, 443

9 F.3d 1050, 1061 (9th Cir. 2006).  I must construe such EEOC charges liberally. *Id.*  Filing of the

10 administrative charge and any subsequent civil suit are subject to statutory timing requirements.

11 42 U.S.C. § 2000-e5.  In a subsequent civil suit, subject matter jurisdiction extends over "all

12 allegations of discrimination that either fell within the scope of the EEOC's actual investigation

13 or an EEOC investigation which can reasonably be expected to grow out of the charge of

14 discrimination." *Josephs*, 443 F.3d at 1062 (simplified).

15    The only specific allegation that Wynn claims may not reasonably stem from Bandiero's

16 charge is her allegation of a retaliatory hostile work environment.  I dismissed that claim above.

17 So this argument for preserving the second affirmative defense is moot.

18    Wynn also argues that Bandiero's suit is barred because some of her damages may have

19 arisen from gender discrimination, not disability discrimination, and Bandiero has not exhausted

20 a gender discrimination claim.  But the fact that some portions of the record support a claim that

21 Bandiero is not making, and thus did not exhaust, does not create a factual dispute material to the

22 ADA claims she is making.  If Wynn wishes to argue that Bandiero's damages are decreased

23 because they were caused by some other form of discrimination, it may do so at trial.

With respect to a contractual bar to suit, Wynn bears the burden to show that there is a genuine dispute of material fact about whether Bandiero's suit is barred by a valid contractual provision. To show a factual dispute, Wynn cites the entire collective bargaining agreement. *See* ECF No. 32-4 at 5-68. But Wynn points to no particular provision that requires Bandiero to grieve a federal ADA retaliation claim before filing suit. Though Wynn contends that it "should be allowed to present evidence" of a contractual bar at trial, ECF No. 32 at 17, the time to do so was in its opposition brief. So Wynn fails to show that there is a genuine dispute regarding a contractual bar to suit. I thus grant Bandiero's motion for summary judgment on Wynn's second affirmative defense.

## B. *Statute of limitations (Wynn's third affirmative defense)*

Bandiero moves for summary judgment on Wynn's third affirmative defense that her claims are barred by the applicable statute of limitations. She argues that she timely filed her civil complaint within the limitation period. Wynn responds that the limitation period cutoff was December 30, 2022, which is 300 days before Bandiero filed her civil complaint. Wynn argues that "[t]o the extent that" Bandiero "relies on alleged discrete acts pre-dating December 30, 2022," Wynn "should be allowed to argue it is barred by the applicable statute of limitations." ECF No. 32 at 18. Bandiero replies that she may assert discrimination at least as early as April 1, 2022 under the "continuing action" doctrine.

Under 42 U.S.C. § 2000e-5(e), a complainant must "file a charge with the EEOC within 180 days of the last act of alleged discrimination, unless the complainant initially institutes proceedings with a state or local agency, in which case the EEOC charge must be filed within 300 days." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000). The parties do not dispute that the limitation period in this action is 300 days before Bandiero filed her charge on

46

September 5, 2023. Wynn computes this date as December 20, 2022, and Bandiero does not dispute that.

I denied all of Bandiero's claims except her ADA retaliation claim regarding the February 2023 return-to-work interaction with Wynn. Neither party suggests that this event is outside the limitation period. So I grant Bandiero summary judgment on Wynn's third affirmative defense.

### C.    After-acquired evidence rule (Wynn's eighth affirmative defense)

Bandiero moves for summary judgment on Wynn's eighth affirmative defense involving the "after-acquired evidence rule." Both parties agree that this rule is inapplicable to this case. Therefore, I grant Bandiero summary judgment as to Wynn's eighth affirmative defense.

**VII.  I grant the parties' motions to seal exhibits containing Bandiero's sensitive medical information but deny Bandiero's motion to seal the exhibit containing the parties' settlement agreement.**

Bandiero moves for leave to file under seal exhibits 3, 4, 5, 17, 22, 41, and 49 attached to her motion for partial summary judgment. ECF No. 29. Wynn does not oppose sealing exhibits 3, 4, and 5. Wynn opposes sealing exhibits 17, 22, 41, and 49, arguing that they contain information core to Bandiero's allegations. Bandiero replies that upon review of Wynn's argument, she does not object to unsealing exhibits 17, 22, 41, and 49.

Wynn moves for leave to file under seal exhibit B to its opposition to Bandiero's motion for partial summary judgement. ECF No. 33. Bandiero did not file an opposition.

The Ninth Circuit recognizes "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). Consequently, a party seeking to seal a judicial record bears the burden of overcoming this strong presumption. *Id.* In the case of dispositive motions, the party seeking to seal the record must articulate compelling reasons supported by specific factual findings that outweigh the general history of

1    access and the public policies favoring disclosure, such as the public interest in understanding

2    the judicial process. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir.

3    2006).  Among the compelling reasons which may justify sealing a record are when "such court

4    files might have become a vehicle for improper purposes, such as the use of records to gratify

5    private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.*

6    at 1179 (quotation omitted).  However, avoiding "a litigant's embarrassment, incrimination, or

7    exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

8         Both parties agree that Exhibits 17, 22, 41, and 49 to Bandiero's motion for partial

9    summary judgment should be unsealed.  So I deny Bandiero's motion to seal those exhibits and

10    order them unsealed.

11        Bandiero's Exhibit 3 contains medical information that her doctor provided to support her

12    leave. ECF No. 28.  Bandiero's Exhibit 4 contains portions of her medical records kept by her

13    rheumatologist. ECF No. 28-1.  Wynn's Exhibit B contains testimony from Bandiero's health

14    care provider regarding private information that she disclosed during her appointments. ECF No.

15    34-2.  Courts have recognized that the "need to protect medical privacy qualifies as a

16    'compelling reason' for sealing records." *Moreno v. Adamson*, No. 3:19-CV-0330-MMD-CLB,

17    2021 WL 76722, at *2 (D. Nev. Jan. 7, 2021) (collecting cases).  "This is because a person's

18    medical records contain sensitive and private information about their health." *Id.*  Though there

19    is not automatically a compelling reason to seal information from a medical record, sensitive

20    medical information unrelated to the case need not "be unnecessarily broadcast to the public." *Id.*

21    Here, these exhibits contain Bandiero's private and sensitive medical information.  I find that the

22    need for confidentiality of Bandiero's sensitive records outweighs the need for public access to

23

1    that information.  So I grant Bandiero's and Wynn's motions as to those exhibits and order them

2    sealed.

3          Bandiero's Exhibit 5 is a confidential negotiated settlement agreement executed in

4    December 2022. ECF No. 28-2.  However, the mere fact that a settlement agreement is

5    confidential is not a sufficient basis for sealing it. *See Watson v. Ocwen Loan Servicing, LLC*,

6    No. EDCV 18-00273 JGB (SPx), 2018 WL 6220011, at *2 (C.D. Cal. Apr. 25, 2018) (collecting

7    cases).  Both parties argue Exhibit 5 should be sealed because it does not relate to their dispute.

8    Which begs the question: then why was it attached as an exhibit?  But even if is not related to

9    this dispute, the *Kamakana* compelling reasons standard applies to any "filed motions and their

10   attachments" if, as here, "the motion is more than tangentially related to the merits of the case."

11   *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).

12         Wynn argues that the agreement may be used for harassing public use because Bandiero

13   ran for public office and Wynn is a large well-known corporate employer.  Wynn also indicates

14   that disclosure of "specific terms of the agreement (amounts paid, timing of the agreement, the

15   treatment and application of payment)" could interfere with the parties' ability to negotiate in the

16   future. ECF No. 31 at 4.  But the timing and existence of the settlement agreement has already

17   been discussed in the publicly available briefing. *See, e.g.*, ECF No. 27 at 2-4.  Though the

18   amount paid and details pertaining to payment in paragraph (2)(a) may impact Wynn's and

19   Bandiero's potential settlement negotiations, Wynn does not indicate why redaction could not

20   satisfy this objective.  Indeed, the vast bulk of the document is boiler-plate terms of non-

21   disclosure, non-admissions, dismissals, and the like.  There is nothing confidential about any of

22   that.  The parties thus have not met their burden to show that there are compelling reasons to seal

23

the entire settlement agreement.  I thus deny Bandiero's motion to seal the entire settlement agreement.

I will allow the filing to remain sealed temporarily so the parties may confer about what, if any, portions of Bandiero's Exhibit 5 should be redacted (e.g., amount of payment).  If any party determines that a portion of the filing should remain sealed, that party must file a motion to seal along with a proposed redacted version of the filing within 14 days of the date of this order.  Any motion to seal must set forth compelling reasons to support redacting those portions.

Therefore, I grant Wynn's motion for leave to file under seal.  I grant Bandiero's motion for leave to file under seal in part as outlined above.

## VIII.   Conclusion

I THEREFORE ORDER that:

- Bandiero's motion for summary judgment **(ECF No. 27) is GRANTED in part**.  I grant her summary judgment on Wynn's second, third, and eighth affirmative defenses.  I deny her motion in all other respects.

- Wynn's motion for summary judgment **(ECF No. 30) is GRANTED in part**.  I deny the motion as to Bandiero's ADA retaliation claim as to the February 2023 return-to-work interaction.  I grant Wynn's motion in all other respects.

- Bandiero's motion for leave to file exhibits 3, 4, 5, 17, 22, 41, and 49 under seal **(ECF No. 29) is GRANTED in part.**  Bandiero's exhibits 3 and 4 **(ECF Nos. 28 and 28-1) shall remain SEALED.**  Bandiero must file publicly available, unsealed versions of Exhibits 17, 22, 41, and 49 within 14 days of entry of this order.

- Wynn's motion for leave to file exhibit B under seal **(ECF No. 33) is GRANTED.**  Wynn's exhibit B **(ECF No. 34-2) shall remain SEALED**.

- Bandiero's exhibit 5 **(ECF No. 28-2) shall REMAIN SEALED pending further order of the court**.

DATED this 11th day of September, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE